United States District Court
District of Massachusetts

```
_____
                              )
Joshua Toney,                 )
                              )
          Plaintiff,          )
                              )
     v.                       )    Civil Action No.
                              )    19-10561-NMG
Michael Guerriero,            )
                              )
          Defendant.          )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

Joshua Toney ("Toney" or "plaintiff") brings this action under 42 U.S.C. § 1983 ("§ 1983") against State Trooper Michael Guerriero ("Trooper Guerriero" or "defendant") in his individual capacity.  Toney alleges that Trooper Guerriero violated plaintiff's constitutional right to procedural due process. Defendant has filed a motion for summary judgment (Dkt. No. 70), which plaintiff opposes.  For the reasons set forth below, the Court will allow defendant's motion for summary judgment.

I.  **Background**

   A.  **Facts**

Trooper Guerriero arrested Toney on April 14, 2017, and transported Toney to the Massachusetts State Police Andover Barracks ("Andover Barracks").  At the Andover Barracks, Trooper Guerriero inventoried Toney's personal possessions, which

included about $750 in cash and a gold necklace.  Toney was held at the Andover Barracks until Trooper Guerriero transported him to the District Court in Lawrence, MA for an arraignment ("Lawrence District Court").  It is undisputed that Trooper Guerriero failed to procure the required signature of the court officer to whom he transferred Toney, along with Toney's personal property, at the Lawrence District Court.  Trooper Guerriero's failure to comply with Massachusetts State Police ("State Police") procedures broke the chain of custody with respect to Toney's possessions.

Following his arraignment, Toney was taken to the Essex County House of Correction in Middleton, MA ("Essex HOC").  At the Essex HOC, the Sheriff's Office prepared a "New Property Inventory Form" describing Toney's personal possessions.  The form, however, listed neither the $750 in cash nor the gold necklace.  Toney noticed those omissions and declined to sign the form, and a police officer at the Essex HOC handwrote a note about the missing items on the first page of the inventory. Toney's money and gold necklace, which was purportedly valued at $23,400 in 2004, have never been recovered.  His property went missing sometime between his arrest and booking by Trooper Guerriero and his intake at the Essex HOC.

The parties dispute the sufficiency of certain administrative and grievance procedures that may have been

available to Toney at the Essex HOC and elsewhere.  They agree,
however, that Toney communicated with others about his missing
property and sought its recovery in state court.  On September
28, 2017, Toney's defense counsel filed a motion for the return
of his property in the underlying state criminal matter, which
was granted by the Massachusetts Superior Court.  Toney made
additional requests supported by sworn affidavits seeking the
return of his property.  After an extended period of time, an
Assistant District Attorney filed a report that Toney's property
was no longer in the possession of the State Police.  The report
claims that Toney's property was consigned to the Lawrence
District Court on the day of his arrest but does not identify
the person who received Toney's property at the courthouse.  The
Superior Court dismissed the matter on the grounds that the
State Police could not be expected to return property they did
not possess or control.

**B.  Procedural History**

Plaintiff filed suit in this Court in March, 2019 against
Trooper Guerriero, the State Police and the Lawrence District
Court.  In May, 2019, the Court dismissed the State Police and
Lawrence District Court from the action, as well as the claims
against Trooper Guerriero in his official capacity.  Trooper
Guerriero, the sole remaining defendant, filed a motion to
dismiss (Docket No. 19) for failure to state a claim in

February, 2020 after receiving a summons earlier that month.  In September, 2020, the Court held a hearing on defendant's motion and, ultimately, denied the motion to dismiss.

The parties were encouraged to resolve the matter but were unable to do so and, in March, 2021, plaintiff filed an amended complaint.  Defendant answered the amended complaint in April, 2021.  In July, 2022, the motion for summary judgment now under consideration (Docket No. 70) was filed and plaintiff submitted an opposition to the motion shortly thereafter.  The Court requested supplemental briefing from the parties, which both plaintiff and defendant timely provided in September, 2022.

## II.   Motion for Summary Judgment

### A.   Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**B. Application**

In plaintiff's amended complaint, he alleges that Trooper Guerriero violated his Fourteenth Amendment rights by intentionally depriving plaintiff of his personal property without due process. As described above, the parties agree that Trooper Guerriero's conduct was contrary to the policies and procedures of the State Police. Toney's Fourteenth Amendment claim, therefore, alleges that he was deprived of a property interest due to the unauthorized conduct of Trooper Guerriero.

Because Toney was allegedly harmed by the random and unauthorized act of a state official, his claim comes within the ambit of the Supreme Court's Parratt-Hudson doctrine. See Parratt v. Taylor, 451 U.S. 527, 540-44 (1981); Hudson v. Palmer, 468 U.S. 517, 530-33 (1984). The First Circuit Court of Appeals ("the First Circuit") has summarized the Parratt-Hudson doctrine as a directive that limits the due process inquiry "to the issue of the adequacy of the postdeprivation remedies provided by the state" in cases where a plaintiff was deprived by the "random and unauthorized" conduct of a state official. Hadfield v. McDonough, 407 F.3d 11, 19 (1st Cir. 2005) (quoting O'Neill v. Baker, 210 F.3d 41, 42 (1st Cir. 2000)).

The focus of the Parratt-Hudson doctrine on post-deprivation remedies is grounded in the rationale that, when a deprivation is caused by the random and unauthorized acts of a state official, requiring further pre-deprivation procedures is ineffective because the state is unable to predict and prevent such conduct. Hudson, 468 U.S. at 533. The First Circuit, echoing the Supreme Court, has further described the doctrine as being designed to ensure that the Due Process Clause does not become "a font of tort law to be superimposed upon whatever systems may already be administered by the States." San Geronimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465, 481 (1st

Cir. 2012) (quoting <u>Albright</u> v. <u>Oliver</u>, 510 U.S. 266, 284 (1994) (Kennedy, J., concurring)).

Plaintiff contends that he had no adequate post-deprivation remedy in the present case because the efficacy of the Mass. R. Sup. Ct. 61 petition ("Rule 61 petition") available to him was deliberately and improperly undermined by various representatives of the Commonwealth.  Even assuming the veracity of that contention, a Rule 61 petition was not the only post-deprivation remedy available to Toney under Massachusetts law. He also had a Massachusetts common law tort claim available to him, which is the precise form of adequate post-deprivation remedy contemplated by <u>Parratt</u> and <u>Hudson</u>. <u>See, e.g.</u>, <u>Davis</u> v. <u>Schifone</u>, 185 F. Supp. 2d 95 (D. Mass. 2002) (holding that plaintiff had an adequate post-deprivation remedy for the alleged theft of his money by a state police officer because he could have brought a Massachusetts state tort claim for conversion); <u>Barbosa</u> v. <u>Massachusetts</u>, 14-cv-13439-ADB, 2017 WL 2262119 (D. Mass. Apr. 4, 2017) (holding that plaintiff's allegations of lost or destroyed property were not actionable under § 1983 because of the adequacy of available Massachusetts tort law remedies).

As is made clear in plaintiff's amended complaint and implicit in his avowal that a Rule 61 petition was the single post-deprivation remedy available to him, plaintiff asserts that

he could not bring a state tort action against Trooper Guerriero for intentional deprivation of his property because any such suit is barred by M.G.L. c. 258, §§ 10(c) and (d).  Subsections 10(c) and 10(d) relate, respectively, to intentional torts and the lawful detention of any goods or merchandise by law enforcement officers.  They, like the other subsections contained within M.G.L. c. 258, § 10, negate the Commonwealth's waiver of sovereign immunity for the specified conduct, thereby barring suits against state employers.

State employees may, however, be sued for such conduct under Massachusetts law. Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 286 n.9, 475 N.E.2d 727, 734 n.9 (1985) (holding that public employers are not liable for the intentional torts of their employees but that public employees may be held personally liable); S. Bos. Betterment Tr. Corp. v. Bos. Redevelopment Auth., 438 Mass. 57, 69, 777 N.E.2d 812, 820 (2002) (concluding that, pursuant to § 10(c), M.G.L. c. 258 did not entitle the defendant public official to immunity because he had been sued individually for an intentional tort).  Conversion is an intentional tort for which state employees may specifically be held liable in Massachusetts. See Baker v. Gray, 57 Mass. App. Ct. 618, 625, 785 N.E.2d 395, 401 (Mass. App. Ct. 2003) (holding that plaintiffs had post-deprivation remedies, including an action for conversion, available to them); Facella

v. <u>Commonwealth</u>, 19-P-1735, 2021 WL 4057344 (Mass. App. Ct. Sept. 7, 2021) (affirming the trial court's allowance of summary judgment against plaintiff's § 1983 claim because a state law tort claim of conversion was an adequate post-deprivation remedy under <u>Hudson</u>).

Plaintiff has, both <u>pro</u> <u>se</u> and with the benefit of appointed counsel, brought what on its face appears to be a meritorious action deserving of compensation but because 1) he could have brought a tort claim under Massachusetts law, such as an action for conversion, and 2) a state tort claim is an adequate post-deprivation remedy for the unauthorized deprivation of property by a state official under Supreme Court and First Circuit precedents, he does not have an actionable § 1983 claim in this case.

<strong>ORDER</strong>

For the foregoing reasons, defendant's motion for summary judgment (Docket No. 70) is **ALLOWED**.

**So ordered.**

 /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  September 28, 2022